UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOUTHERN FIDELITY INS. CO.                CIVIL ACTION

VERSUS                                    NO: 11-2041

CAILLOUET                                 SECTION: "J" (1)

**ORDER AND REASONS**

Before the Court are Defendant's Motion to Dismiss (Rec. Doc. 5) and Plaintiff's opposition to same (Rec. Doc. 7), on supporting memoranda without oral argument. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Defendant's Motion to Dismiss (Rec. Doc. 5) should be DENIED.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This case arises from a dispute between a homeowner and his insurer regarding alleged damage to the homeowner's Louisiana home suffered as a result of a water leak that allegedly occurred on or about January 24, 2011. The insured filed an insurance claim; Plaintiff insurer and Defendant insured reached an impasse

1

regarding the value of the property damage. On August 18, 2011, the insurer filed an action in this Court seeking declaratory judgment (1) that the appraisal provision in the insurance policy (the "Policy") is clear, unambiguous, and valid; (2) compelling both parties to fully and completely participate in the appraisal process pursuant to the appraisal provision; (3) that the appraisal provision requires the selection of an umpire; (4) that the Court will select an umpire if the parties cannot agree on one, pursuant to the appraisal provision; and (5) for all other general and equitable relief.

On April 7, 2011, Plaintiff insurer sent a letter to its insured, Donald Caillouet, stating that Plaintiff felt that the parties had reached an impasse on the cost of repairs. The insurer demanded appraisal under the policy and named its appraiser. Rec. Doc. 7-1, at 1. The letter further stated that it would be Caillouet's appraiser's duty to contact the insurer's appraiser so that the two appraisers could meet to agree on the scope of the loss, and subsequently, to choose an umpire who would make a decision. Id. Caillouet likewise appointed his own appraiser.[1] On September 2, 2011, counsel for the insurer sent

---

[1] The insurer asserts that Caillouet named an appraiser in an email interchange between the parties (Rec. Doc. 7-2). Regardless of when and where Caillouet named an appraiser, Caillouet does not dispute that each party has appointed its own appraiser. Rec. Doc. 5-1, at 1.

Caillouet a letter invoking umpire selection under the Policy and recommending three potential umpires. Rec. Doc. 7-3, at 2. The letter requested that, pursuant to the Policy, Caillouet agree to one of these individuals within 15 days of the date of the letter. Id. at 3. On September 26, 2011, counsel for Caillouet sent a fax to the insurer's counsel effectively rejecting the insurer's proposed umpires and suggesting three other potential umpires acceptable to Caillouet. Rec. Doc. 7-4, at 1. Caillouet asserted that he "would like both appraisers to sit down and choose an umpire between the two of them." Id. On October 6, 2011, the insurer's counsel countered yet again with the names of two other individuals to potentially serve as an umpire. Rec. Doc. 7-5, at 1. Finally, on October 19, 2011, Caillouet's counsel responded to that counter with two more suggestions and invited the insurer's counsel to suggest other companies or law firms who offer umpire services. Rec. Doc. 7-6, at 1.

**THE PARTIES' ARGUMENTS**

Defendant Caillouet filed the instant motion to dismiss, alleging that the insurer's claims are premature and unripe for adjudication. The sole argument is that a condition precedent to the parties' ability under the Policy to obtain a court-appointed

3

umpire is the appraisers' failure to agree on umpire selection for 15 days, which is alleged not to have occurred. The Policy provision at issue states:

> The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then on request of you or us such umpire shall be selected by a judge of a court of record in the state in which the property covered is located.

Rec. Doc. 1, at 4; <u>see</u> <u>also</u> Rec. Doc. 5-1, at 2. Caillouet argues that because neither appraiser has even attempted to select an umpire, the insurer's request that the Court select an umpire is premature. He asserts that the appraisers "have not yet consulted, met, spoken, or corresponded in any way regarding the selection of an umpire." Rec. Doc. 5-1, at 2. Thus, he argues, they cannot have failed for 15 days to agree upon an umpire—the contingent future event that would ripen the claim for judicial umpire selection under the Policy. Caillouet asserts that the Policy requires a good-faith attempt by the appraisers to agree on an umpire, and a 15-day failure of same, prior to judicial involvement. Finally, Caillouet notes that although the *parties* have communicated regarding umpire selection, the Policy requires the *appraisers* to engage in such communication. Although Caillouet requested that the appraisers become involved in umpire selection, he asserts that such involvement still has

4

not occurred.[2]  Thus, Defendant Caillouet argues, the instant case is not justiciable.

In opposition, the insurer argues that because the correspondence between the parties evidences their inability to mutually agree upon an umpire, the case is ripe for adjudication. It argues that the case is ripe because the complaint seeks Caillouet's full and complete participation in the appraisal process and requests the appointment of an umpire.  It asserts it has met its burden of establishing diversity jurisdiction. Further, it alleges that the Declaratory Judgment Act provides the Court with subject matter jurisdiction.  The insurer argues that the case is ripe because the insurer will suffer hardship if the Court does not compel appraisal and appoint an umpire, and because the issues are fit for judicial decision.  In addition, the insurer argues that Caillouet's request for dismissal based on policy language is more suited to an ultimate determination on the merits.  Finally, the insurer points out that appraisal provisions are subject to adjudication, and therefore argues that the Court has jurisdiction to order the parties to submit to the appraisal process.

---

[2] The insurer does not appear to dispute this assertion.

## DISCUSSION

**A. Rule 12(b)(1) Standard**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). United States v. City of New Orleans, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, __U.S.__, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. A court must

accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 129 S. Ct. at 1949-50.

**B. Ripeness**

The complaint alleges that the pertinent appraisal portion of the Policy reads as follows:

> **E. Appraisal.** In case we and you shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The *appraisers shall first select* a competent and disinterested *umpire*; and **failing for fifteen days to agree** upon such umpire, **then** on request of you or us *such umpire shall be selected by a judge* of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with us shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

Rec. Doc. 1, at 4 (emphasis added).[3] The clear language of the

---

[3] Louisiana statutory law automatically includes within Louisiana fire insurance policies an appraisal provision that appears to be identical to the appraisal provision in the Policy at issue. See LA. REV. STAT. § 22:1311(F).

7

Policy requires the appraisers to attempt an umpire selection prior to any judicial umpire selection. In fact, a literal reading appears to require umpire selection earlier than either of the parties admits: even before the appraisers make their separate loss appraisals. The Policy states that the appraisal process proceeds as follows: First, the appraisal provision is triggered by the parties' failure to agree regarding the amount of loss.[4] Second, upon written demand by either party, each party selects an appraiser and informs the other party of its selection.[5] Third, the appraisers select an umpire, and "failing for fifteen days to agree upon such umpire," only then may either party request that a judge select an umpire.[6] The parties do not dispute that steps one and two are complete: the parties have disagreed as to loss valuation, and each has named its appraiser. Thus, the Policy requires that the *appraisers* select an umpire. The insurer in its opposition seems to miss this point: read literally, the Policy does not permit the *parties* to select the

---

[4] "In case we and you shall fail to agree as to the actual cash value or the amount of loss . . . ." Rec. Doc. 1, at 4.

[5] "[T]hen, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand." Id.

[6] Id. The Policy states, "The appraisers shall *first* select [an] . . . umpire . . . ." Id. (emphasis added). "First" seems to mean "prior to appraisal," because the immediately following sentence states that the appraisers "*then* appraise the loss." Id. (emphasis added).

8

umpire, but gives the *appraisers*—at least initially—this task.

Caillouet asserts, and the insurer does not dispute in its opposition, that the appraisers have not even met to attempt to select an umpire. He points out that he has requested from the insurer that each party's appraiser "sit down and choose an umpire," Rec. Doc. 7-4, at 1, but this request has gone unheeded. Thus, Caillouet persuasively argues that under a plain reading of the Policy, the appraisers cannot have "failed" to agree upon an umpire, which is clearly a prerequisite to either party's request for judicial selection of an umpire. See Rec. Doc. 1, at 4 (the Policy providing that "*failing* for fifteen days *to agree* upon such umpire, **then** *on request of you or us such umpire shall be selected by a judge . . . .*") (emphasis added). Further, the fact that the Policy requires a 15-day failure of the appraisers to select an umpire implies that *something* must trigger said 15-day period. It is unimaginable how a 15-day "failure-to-agree" period of time can commence without palpable contact between the appraisers for the purpose of discussing umpire selection.

The insurer cites no case providing a different interpretation of policy appraisal language like the language at

issue.[7] Cases cited by Plaintiff are inapposite. For example, this Court in <u>Jarrell v. Southern Fidelity Insurance Co.</u>, Civil Action No. 11-1222 (E.D. La. Aug. 22, 2011) held that the appraisal process was enforceable on the parties, but did not address the issue of judicial selection of an umpire. In fact, the Court left the task of umpire selection "to the parties as envisioned by the policy," <u>id.</u> at *3, and noted that "the policy specifically provides that the two appraisers are to select the umpire." <u>Id.</u> n.3.

Although Caillouet's point is well-taken regarding the need for the appraisers to confer, he is not entitled to the dismissal that he seeks. It is true that a component of subject matter jurisdiction is the ripeness of a case for decision. <u>Lopez v. City of Houston</u>, 617 F.3d 336, 341 (5th Cir. 2010). However, even though the insurer's request for judicial appointment of an umpire is not ripe, this does not make all the claims in this case unripe. As previously stated, the complaint requests declaratory relief in several particulars: (1) that the appraisal provision in the Policy is clear, unambiguous, and valid; (2) compelling both parties to fully and completely

---

[7] As previously noted, the Policy's appraisal provision duplicates the provision stated in Louisiana statutory law. <u>See</u> LA. REV. STAT. § 22:1311(F).

participate in the appraisal process pursuant to the appraisal provision; (3) that the appraisal provision requires the selection of an umpire; (4) that the Court will select an umpire if the parties cannot agree on one, pursuant to the appraisal provision; and (5) for all other general and equitable relief. See Rec. Doc. 1, at 5-6. The Court assumes for the sake of the instant motion, based on the foregoing analysis, that the insurer would be entitled to a declaration as to the third item—that the appraisal provision requires umpire selection.

However, the insurer apparently misses the implication of such a declaration that umpire selection is required. The Court has found that the *appraisers* are required to meet to select an umpire, and that if they fail to agree after 15 days, only then may this Court appoint an umpire. Thus, the Court finds that although it has subject matter jurisdiction over this action—and thus Defendant's motion must be denied—the parties must submit evidence of the *appraisers' failure* to agree on an umpire, pending which the case will be stayed.[8]

---

[8] The Fifth Circuit has noted a district court's wide discretion in staying proceedings before it. See In Re Ramu Corp., 903 F.2d 312, 318 (5th Cir. 1990) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation . . . . This authority has been held to provide the court the 'general discretionary power to stay proceedings before it in control of its docket and in the interests of justice.'") (citations omitted).

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss (Rec. Doc. 5) be and the same is hereby **DENIED.**

**IT IS FURTHER ORDERED** that this case be administratively closed pending the parties' providing the Court with evidence that the appraisers have failed to agree on umpire selection within the meaning of the Policy.

New Orleans, Louisiana this 21st day of December, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE